UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60567-RUIZ/STRAUSS

FRANK REYES,

      Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me on Frank Reyes' ("Petitioner's") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("the Petition"). [DE 1]. Specifically, Petitioner challenges his conviction and sentence for second-degree murder on grounds of constitutional error and ineffective assistance of trial counsel. [DE 1; DE 9]. This matter has been referred to me to take all action as required by law pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida. [DE 11]. I have carefully reviewed the Petition [DE 1], the Response [DE 5], the Reply [DE 9], and the record. Being otherwise duly informed, for the reasons further described below, I respectfully **RECOMMEND** that the Petition be **DENIED.**

## I.  **FACTUAL BACKGROUND**

On June 20, 2008, Petitioner and Alfredo Cruz were involved in a drug transaction; Cruz, a recent high school graduate, was to purchase marijuana from Petitioner, who was sixteen years old at the time.  [DE 7-1 at 235-37, 401, 408-09].  Cruz's friend, Kevin Caban, drove him to Petitioner's apartment complex.  *Id.* at 401, 407-08.  Petitioner came up to the passenger side of Caban's car, shook hands with Cruz, and gave Cruz a dime bag (or $10.00 worth) of marijuana.  *Id.* at 408.  Cruz looked at the marijuana and said that he only wanted a nick bag (or $5.00 worth).  *Id.* at 408-10.  An argument ensued between Petitioner and Cruz.  *Id.* at 411-13.  Petitioner pulled out a gun from his backpack and pointed it in the car directly at Cruz, sticking the tip of the barrel through the window.  *Id.* at 411-14.  Petitioner held the gun in the window for about thirty seconds, pulled the trigger, and ran.  *Id.* at 415-17.  Cruz suffered a gunshot wound to the face and later died.  *Id.* at 193, 303, 415-16.

Detective Jason Wilkey of the Sunrise Police Department came in contact with Petitioner on June 21, 2008, when he was walking through Petitioner's apartment complex.  *Id.* at 306-07.  Det. Wilkey took Petitioner into custody.  *Id.* at 307.  Petitioner initially denied that he was involved with the shooting.  *Id.* at 319.  However, Petitioner eventually admitted that he shot Cruz during a marijuana deal and gave a statement to police, which was audiotaped.  *Id.* at 234-45, 321.  According to Petitioner, there was something "fishy" about the deal because Caban and Cruz parked in the back of his apartment complex and called him over.  *Id.* at 244.  After Petitioner gave Cruz the dime bag, Cruz did not give Petitioner any money for the marijuana.  *Id.* at 237.  Instead, Petitioner stated that Cruz started talking about someone Petitioner fought in high school and then tried to grab him.  *Id.*  Petitioner stated that Cruz was acting aggressively towards him and "rushed at" him so he had to shoot to defend himself.  *Id.* at 238.

## II.   **PROCEDURAL HISTORY**

On June 20, 2008, Petitioner was charged by information with the second-degree murder of Cruz.  [DE 6-1 at 4-5].  The case proceeded to a jury trial, at which Petitioner claimed self-defense.  [DE 7-1 at 1, 289-90].  Petitioner did not testify at trial.  *Id.* at 450.  On May 12, 2009, a jury found Petitioner guilty as charged, and the trial court sentenced him to forty years in prison, with a mandatory minimum sentence of twenty-five years.  [DE 6-1 at 7-8, 13, 192].

After his conviction and sentence, Petitioner filed a direct appeal.  *Id.* at 20.  Petitioner's counsel subsequently filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing that he could not in good faith argue reversible error.  *Id.* at 22-49.  New counsel appeared for Petitioner and filed an initial brief asserting two contentions of error: (1) that cumulative errors during closing argument vitiated the fairness of the trial and (2) that the State failed to present sufficient evidence to prove second-degree murder.  *Id.* at 53-96.  The Fourth District Court of Appeal per curiam affirmed Petitioner's conviction and sentence on February 22, 2012.  *Id.* at 143.  The mandate issued on March 23, 2012.  *Id.* at 145.

On October 24, 2012, Petitioner filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), seeking to correct the amount of jail credit to which he was entitled.  *Id.* at 147-48.  Specifically, Petitioner argued that he was entitled to twenty-nine days of credit for the time he was detained with the Department of Juvenile Justice.  *Id.*  In response, the State agreed that Petitioner was entitled to additional days of credit, but only nineteen days and not twenty-nine as Petitioner claimed.  *Id.* at 153-54.  On November 30, 2012, the trial court entered an order granting-in-part and denying-in-part Petitioner's motion and directing the clerk of court to correct Petitioner's sentence to reflect an additional nineteen days of credit for a total of 384 days of credit time served.  *Id.* at 159.  Petitioner appealed the trial court's ruling on

December 12, 2012. *Id.* at 163-64. The Fourth District Court of Appeal per curiam affirmed the trial court's order on July 11, 2013. *Id.* at 167. The mandate issued on August 9, 2013. *Id.* at 169.

On February 1, 2013, while Petitioner's Rule 3.800(a) Motion was pending, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and asserted two grounds for relief. *Id.* at 171-86. First, Petitioner argued that his trial counsel provided ineffective assistance because he failed to object to a legally incorrect jury instruction on self-defense. *Id.* at 179-84. Petitioner argued that the self-defense instruction was incorrect because it (1) stated that petitioner could only resort to deadly force if the victim was attempting to murder him and did not include the aggravated assault or battery that Petitioner allegedly perceived and (2) contained stand your ground language that did not apply because Petitioner was engaged in unlawful activity. *Id.* Second, Petitioner argued that juror Jerome McDougle ("Juror McDougle") did not disclose that he was a victim of a violent crime during voir dire and that evidence regarding Juror McDougle's victimization should be considered newly discovered evidence warranting a new trial. *Id.* at 184-86. Alternatively, Petitioner argued that his trial counsel again provided ineffective assistance for failing to further question Juror McDougle regarding his victimization. *Id.* at 186.

In response, the State contended that Petitioner's first argument failed to meet the deficient performance prong of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 206-09. According to the State, the evidence did not support the inclusion of aggravated assault or battery in the jury instructions. *Id.* at 206. Regarding Petitioner's second argument, the State contended that the information regarding Juror McDougle was not newly discovered because it was not previously unknown (Juror McDougle previously stated during voir dire that he was a victim of a crime), could have been obtained through due diligence (the information regarding Juror McDougle's

4

victimization was available on the internet), and would not have produced an acquittal on retrial (there was no evidence to support that Juror McDougle was actually biased). *Id.* at 210-15. The State also contended that Petitioner's ineffective assistance arguments failed because he expressed on record that he was satisfied with how his trial counsel handled jury selection. *Id.* at 213-15. On January 15, 2015, the trial court entered an order summarily denying Petitioner's Rule 3.850 Motion "for the reasons contained in the State's Response." *Id.* at 814. Petitioner filed a motion for rehearing, which the trial court also denied. *Id.* at 1004-13, 1018.

On February 10, 2015, Petitioner appealed the trial court's order denying his Rule 3.850 Motion. *Id.* at 816. He raised the same issues he raised in the motion and argued that the trial court erred in denying the motion without an evidentiary hearing. *Id.* at 818-44. The Fourth District Court of Appeal ordered the State to respond. *Id.* at 846. In response, the State argued that the trial court correctly summarily denied Petitioner's motion. *Id.* at 848-52. On September 8, 2016, the Fourth District Court of Appeal per curiam affirmed the trial court's order denying Petitioner's Rule 3.850 Motion. *Id.* at 854. The mandate issued on December 30, 2016. *Id.* at 856.

On November 15, 2015, while his Rule 3.850 Motion was pending, Petitioner filed a second motion to correct illegal sentence pursuant to Rule 3.800(a). *Id.* at 858-64. Petitioner sought to correct his sentence to reflect that he was entitled to resentencing and mandatory judicial review of his sentence in accordance with sections 921.1401 and 921.1402, Florida Statutes. *Id.* at 858-60. These statutes, enacted in 2014, provide that juveniles sentenced to more than twenty-five years in prison (including those convicted of first-degree murder) receive a mandatory review of their sentence after twenty-five years of incarceration. *Id.* at 860-62. The Florida Legislature enacted these statutes because of the constitutional mandates of *Graham v. Florida*, 540 U.S. 48

5

(2010) and *Miller v. Alabama*, 567 U.S. 460 (2012). *Id.* at 860. While Petitioner acknowledged that he is not eligible for re-sentencing under *Miller* or *Graham*, he argued that his forty-year sentence (without the prospect of a mandatory review) for the lesser offense of second-degree murder, when compared to those convicted of first-degree murder receiving a mandatory review after twenty-five years, violates the proportionality principle of the Eighth Amendment. *Id.* at 862-64. Petitioner filed a notice of supplemental authority with an excerpt from the dissenting opinion of Florida Supreme Court Justice Jorge Labarga in *Pedroza v. State*, 291 So. 3d 541 (Fla. 2020), in support of his argument. *Id.* at 873-75. In response, the State argued that Petitioner's motion should be denied because he "failed to show any illegality of sentence." *Id.* at 878-80. The State relied on the majority in *Pedroza*, which had found that a juvenile defendant's forty-year sentence for second degree murder did not violate the Eighth Amendment as interpreted in *Graham* and *Miller*. *Id.* at 879. The State also noted that the Supreme Court of the United States denied Pedroza's petition for writ of certiorari, despite Justice Labarga's observation of the disparity about which Petitioner complained. *Id.* at 879-80. On May 20, 2021, the trial court denied Petitioner's second Rule 3.800(a) Motion "for the reasons contained in the State's Response." *Id.* at 897. On June 2, 2021, Petitioner filed a motion for rehearing arguing that his sentence is illegal because he is disproportionately affected by the new juvenile sentencing legislation, sections 921.1401 and 921.1402, Florida Statutes. *Id.* at 899-901. Petitioner clarified that neither *Miller*, *Graham*, nor *Pedroza* applied to his argument that his sentence was illegal and that his argument was solely based on sections 921.1401 and 921.1402. *Id.* at 899-900.[1] The trial court denied the motion for

---

[1] On September 27, 2016, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 "to determine whether [his] sentence violated *Graham* or *Miller* and if so resentencing is necessary." [DE 6-1 at 914-17]. On March 20, 2020, Petitioner filed a motion to voluntarily dismiss this Rule 3.850 Motion. *Id.* at 920. The trial court granted Petitioner's motion and voluntarily dismissed his Rule 3.850 Motion. *Id.* at 924.

rehearing, and Petitioner appealed.  *Id.* at 904, 906-07.  The Fourth District Court of Appeal per curiam affirmed the trial court's order denying Petitioner's second Rule 3.800(a) Motion, and the mandate issued on December 10, 2021.  *Id.* at 910, 912.

On June 12, 2017, Petitioner filed a motion for leave to interview Juror McDougle.  *Id.* at 926-32.  Petitioner argued that the verdict may be subject to challenge because Juror McDougle would have likely been excluded if the facts surrounding his victimization were known and Juror McDougle's failure to disclose his victimization amounted to a violation of his right to a fair and impartial juror.  *Id.* at 930-32.  Petitioner filed an addendum to the motion to include additional facts related to Juror McDougle's victimization.  *Id.* at 989-90.  The trial court has not yet ruled on this motion.  Petitioner filed the Petition on March 17, 2022.  [DE 1].

## III.   <u>PRELIMINARY MATTERS</u>

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "AEDPA requires that a state prisoner seeking habeas relief under Section 2254 must bring his federal petition within a year from the date that his state conviction becomes 'final,' either by the conclusion of his direct review or the expiration of time to seek such review."  *Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1342 (11th Cir. 2018) (citing 28 U.S.C. § 2244(d)(1)(A); *Carey v. Saffold*, 536 U.S. 214, 216 (2002)).  "This one-year statute of limitations will be tolled, however, for '[t]he time during which a properly filed application for State post-conviction or other collateral review' is pending in the state court."  *Id.* (quoting 28 U.S.C. § 2244(d)(2)).

In addition, "[t]he habeas statute requires applicants to exhaust all available state law remedies."  *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citing 28 U.S.C.

§ 2254(b)(1)(A)).  AEDPA's limitation period and tolling provision, along with the habeas

statute's exhaustion requirement work together to "encourage litigants *first* to exhaust all state

remedies and *then* to file their federal habeas petitions as soon as possible."  *Duncan v. Walker*,

533 U.S. 167, 181 (2001).  Thus, before proceeding to analyze Petitioner's claims on the merits, I

address the issues of timeliness and exhaustion.

### A.  Timeliness

As to the timeliness of the Petition, Respondent concedes that the Petition is timely filed.

[DE 5 at 9-11].  I agree that the Petition is timely filed for the reasons set forth below.  The time

limits for filing an application for habeas relief from a state conviction are set forth in 28 U.S.C. §

2244(d), which provides as follows:

> **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  Thus, "AEDPA's statute of limitations begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction and the sentence the petitioner is serving, is final." *Vaughan v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 554, 555 (11th Cir. 2019) (per curiam) (quoting *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1285, 1293 (11th Cir. 2007)).  When a petitioner is resentenced, the statute of limitations does not run until the date the resentencing judgment becomes final.  *See Hepburn v. Moore*, 215 F.3d 1208, 1209 (11th Cir. 2000).  Tolling applies, however, during the time in which "a properly filed application for State post-conviction or other collateral review" of the judgment is pending.  28 U.S.C. § 2244(d)(2).

Here, Petitioner's appeal of his conviction and sentence was affirmed by the Fourth District Court of Appeal, which was Petitioner's court of last resort, on February 22, 2012.  *See Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1129 n. 86 (11th Cir. 2022).  Thus, Petitioner's judgment and sentence became final ninety days after February 22, on May 22, 2012, when the time for seeking review with the United States Supreme Court expired.  *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F. 3d 1273, 1274-75 (11th Cir. 2006).  Then, Petitioner filed his first Rule 3.800(a) Motion for postconviction relief on October 24, 2012.  A total of 155 days of un-tolled time elapsed from the date Petitioner's judgment and sentence became final on May 22, 2012, until he filed his first Rule 3.800(a) Motion to start the tolling of the one-year limitations period.[2]  The trial court

---

[2] Although Respondent concedes that the Petition is timely, it argues that Petitioner's first Rule 3.800(a) Motion "was not a properly filed tolling motion" because it should have been filed under Florida Rule of Criminal Procedure 3.801 as a motion to correct jail credit.  [DE 5 at 10].  However, as Petitioner points out in his reply, Rule 3.801 was not in effect in 2012 when his motion was filed.  [DE 9 at 4 n.1]; *see* Fla. R. Crim. P. 3.801 (stating that the rule was adopted on April 18, 2013).  Therefore, I find that Petitioner's first Rule 3.800(a) Motion was a properly filed tolling motion.  Assuming arguendo Petitioner's first Rule 3.800(a) Motion was not a properly filed tolling motion, he filed a motion for postconviction relief pursuant to Rule 3.850 on February 1, 2013.  This would only add 100 days to the calculation of un-tolled time (255 days between May 22, 2012

granted-in-part and denied-in-part Petitioner's first Rule 3.800(a) Motion and the Fourth District Court of Appeal affirmed the ruling and issued its mandate on August 9, 2013. However, due to Petitioner's series of successive motions, no more days of un-tolled time elapsed until December 10, 2021, when the trial court's denial of Petitioner's second Rule 3.800(a) Motion became final. A total of ninety-seven days of un-tolled time elapsed from December 10, 2021 to March 17, 2022, when Petitioner filed the Petition. Adding ninety-seven days to the prior calculation of 155 days of un-tolled time brings the total un-tolled time to 252 days. Therefore, Petitioner filed the Petition within the one-year period allowed by statute. Respondent also stipulated that the Petition is timely. [DE 5 at 9]. Accordingly, I find that the Petition is timely filed.

## B. **Exhaustion**

"Before bringing a habeas action in federal court, [a] petitioner must exhaust all state court remedies that are available for challenging his conviction." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 520 (11th Cir. 2019) (citing 28 U.S.C. § 2254(b), (c)). "The exhaustion requirement is grounded in principles of comity and reflects a desire to protect the state courts' role in addressing alleged violations of state prisoners' federal rights." *Mauk v. Lanier*, 484 F.3d 1352, 1357 (11th Cir. 2007) (citing *Thomas v. Crosby*, 371 F.3d 782, 813 (11th Cir. 2004)); *see also Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1294 (11th Cir. 2014) (noting that the exhaustion requirement gives the state court system "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights"). In order to satisfy the exhaustion requirement, a "prisoner must 'fairly present' his federal claim in each appropriate state court." *Taylor*, 760 F.3d at 1294-95. In other words, the litigant "must make the state court aware that the claims

---

and February 1, 2013) for a total of 352 days. Thus, as Respondent concedes, the Petition would still be timely.

asserted present federal constitutional issues." *Jimenez*, 481 F.3d at 1342 (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)). "The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court 'the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim federal.'" *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). But "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim." *See Baldwin*, 541 U.S. at 32; *see also McNair v. Campbell*, 416 F.3d 1291, 1303-04 (11th Cir. 2005) (finding petitioner relying solely on state law standards and failing to cite any United States Supreme Court or federal appellate court cases failed to "fairly present" federal claim). "Comity also requires that the claims the prisoner presents to the district court be the *same claims* the prisoner exhausted in the state courts." *Green*, 28 F.4th at 1129. "To the extent the claims are not the same — in terms of their legal theory and facts on which they rest — as the claims exhausted in the state courts, the federal court will treat the claims as unexhausted." *Id.* (cleaned up).

Here, Petitioner used a form titled "Petition Under 28 U.S.C. 2254 For Writ Of Habeas Corpus By A Person In State Custody," which was provided by the Court, to file the Petition. [DE 1]. Respondent argues that it "cannot thoroughly conclude that Petitioner exhausted each claim based on the bare bones of each claim in the Petition." [DE 5 at 12]. In reply, Petitioner contends that his claims are exhausted and that he fully complied with the Court's rules, which direct him to use the 2254 form. However, Petitioner misconstrues Respondent's argument. Respondent is not arguing that Petitioner's claim should be denied because he used the court-provided 2254

form[3]; rather, Respondent argues that Petitioner's form does not contain enough information for it to conclude what Petitioner is arguing and how his arguments differ from or are similar to the arguments he made before the state courts.  Regardless, I find that the Petition (and Petitioner's reply) is sufficient to appraise the Court of Petitioner's arguments.

Turning to the substance of the exhaustion arguments, Respondent largely concedes that Petitioner exhausted the claims he presents in Grounds 1 and 3 of the Petition.  [DE 5 at 12] ("[I]t appears that Petitioner has exhausted grounds one and three through his postconviction motions and on appeal from the denials of the motions.").  With respect to Ground 2, however, Respondent argues that Petitioner has not exhausted his claim.  I agree.

In Ground 2 of the Petition, Petitioner argues that Juror McDougle's misconduct warrants a new trial.  His Petition does not explicitly indicate the doctrine on which he relies.  However, Petitioner's reply confirms that he is seeking redress for an alleged violation of his Sixth Amendment right to an impartial jury.  In his reply, he cites *Martin v. State*, 322 So. 3d 25 (Fla. 2021), a Florida Supreme Court case discussing how the right to an impartial jury trial is secured by the Sixth Amendment and Due Process Clause of the Fourteenth Amendment (citing case law from the United States Supreme Court), how a juror's failure to honestly answer voir dire questions may implicate that right, and how to evaluate claims involving such alleged failures to answer honestly.  [DE 9 at 20-22].

---

[3] As Petitioner contends, such an argument would be improper. This Court's local rules direct petitioner to utilize the 2254 form to file his petition and state that the petition need not be accompanied by a memorandum of law.  S.D. Fla. L.R. 88.2(a)(2) (stating that petitions for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 "must substantially follow the forms . . . prescribed by the Court"); S.D. Fla. L.R. 7.1(a)(1)(A) (stating that petitions for writ of habeas corpus "need not incorporate a memorandum").

However, Petitioner failed to "fairly present" this federal claim to the state court.   In Petitioner's Rule 3.850 Motion, he raised the issue regarding Juror McDougle's victimization as one of "newly discovered evidence" that warranted a new trial.   As an alternative, he argued that if the trial court did not agree that the evidence regarding Juror McDougle constituted newly discovered evidence, his counsel was ineffective for failing to question Juror McDougle about the circumstances surrounding his victimization.   Although Petitioner had earlier referred to "his Sixth Amendment right to effective assistance of counsel" (and cited the U.S. Supreme Court's *Strickland* decision), thus appraising the state court of the federal nature of his "alternative" argument, nowhere did he present his "newly discovered evidence" argument as relying on federal law grounds or directly implicating the Sixth Amendment's right to an impartial jury itself (as opposed to the right to effective assistance of counsel).

In the section of Petitioner's Rule 3.850 Motion regarding Juror McDougle (and in the corresponding section of Petitioner's appellate brief on the denial of his Rule 3.850 Motion), Petitioner failed to mention the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment or give any indication that there were federal constitutional issues within his argument.[4]  [DE 6-1 at 184-86, 840-42].  Nor did he cite any cases analyzing his claim on federal grounds.  Whereas Petitioner's reply here cited *Martin v. State*, his Rule 3.850 Motion cited only to *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1988) and *Johnston v. State*, 63 So. 3d 730, 738 (Fla. 2011) (citing *De La Rosa v. Zequeira*, 659 So. 2d 239, 241 (Fla. 1995)).  *Jones* set forth a Florida-law standard for determining when newly discovered evidence merits a new trial, without any

---

[4] This stands in stark contrast to the section of Petitioner's Rule 3.850 Motion addressing his ineffective assistance of counsel claim (the claim in Ground 1 of this Petition) where Petitioner clearly stated the federal issues present in that claim.  [DE 6-1 at 183] ("Counsel's failure to object to such a critical issue has not only Sixth Amendment consequences but also Fourteenth Amendment consequences since the Defendant's due process rights were violated.").

relation to the issue of juror misconduct.  The relevant portion of *Johnston* addressed a juror's non-disclosure of information, but in the context of ineffective assistance of counsel claims.  Moreover, *Johnston*'s discussion of what constitutes "prejudice" from alleged juror misconduct relied entirely on state authorities.  Indeed, *De La Rosa*, on which Petitioner's *Johnston* citation relied for its definition of prejudice, involved a question of juror nondisclosure in a civil case (and thus clearly could not have been grounded in the Sixth Amendment).  And, notably, the test for prejudice described in *Johnston* and *De La Rosa* differs, at least somewhat, from the standard articulated by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) cited by *Martin v. State* (the case on which Petitioner now primarily relies here).  Thus, not only did Petitioner fail to label his claim below as "federal" or explicitly reference any federal source of law, the only cases on which he relied were from Florida state courts, analyzing exclusively Florida state case law, without any mention of the United States Constitution or any federal law or doctrine (other than *Strickland*).

Thus, there are two potential problems with Petitioner's instant claim regarding Juror McDougle's alleged misconduct.  His characterization of Juror McDougle's alleged misconduct as directly violating Petitioner's Sixth Amendment right to an impartial jury in his instant petition is arguably different than the "newly discovered evidence" and ineffective assistance of counsel claims he made below (which would render his current claim unexhausted).  However, even to the extent his claims are the same, he failed to alert the state court of the federal nature of his "newly discovered evidence" claim by failing to cite any federal source of law, cite any case law analyzing the claim based on federal sources, or even label the claim as "federal."  *See Alexander v. Inch*, 2021 WL 326903, *3 (S.D. Fla., Jan. 31, 2021) (finding claims not properly exhausted when petitioner never cited federal law in state proceeding or labeled claims as "federal") (citing

*McNair*, 416 F.3d at 1302).  Therefore, I find that Petitioner has not "fairly presented" his federal claim to the state court and that his claim is not exhausted.[5]

Further, I find that Petitioner's unexhausted impartial jury claim is also procedurally defaulted because if Petitioner attempted to bring the claim now in state court, it would be dismissed as untimely and successive under Rule 3.850.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (stating that "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then "there is a procedural default for purposes of federal habeas"); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); *Newson v. Sec'y, Dep't of Corr.*, 797 F. App'x 488, 494 (11th Cir. 2019) (noting that a federal claim is subject to procedural default where the petitioner failed to properly exhaust it in state court, and it is obvious that the unexhausted claim would now be barred under state procedural rules) (citing *Bailey*); *see also* Fla. R. Crim. P. 3.850(b), (h)(2) (listing the two-year limitation for filing 3.850 motions and stating that successive 3.850 motions are barred); *Ortiz v. Sec'y, Fla. Dep't of Corr.*, 16-11380-B, 2017 WL 3380604, at *4 (11th Cir. Jan. 20, 2017) ("Under Florida law, Rule 3.850 motions may not be based on claims that could have been raised on direct appeal or in a prior Rule 3.850 motion.").

---

[5] A federal court may entertain the merits of an unexhausted claim if the prisoner establishes either the "cause and actual prejudice" exception or the "actually innocent" exception.  *Green*, 28 F.4th at 1129. However, Petitioner fails to argue that either of these exceptions apply.

IV.   **LEGAL STANDARDS**

### A.   Standard Under the Antiterrorism and Effective Death Penalty Act

As amended by AEDPA, 28 U.S.C. § 2254(a) permits a federal court to issue "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if that custody is "in violation of the Constitution or laws or treaties of the United States." A deferential standard applies, however, to federal courts' review of petitions for habeas relief due to "the State's interest in the finality of convictions that have survived direct review within the state court system" and based upon principles of "comity and federalism." *See Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) ("Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.").

Indeed, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Relevant limitations on habeas relief are set forth in § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A federal habeas court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Furthermore, a state court may "adjudicate on the merits" without issuing a formal opinion or outlining its reasoning. *See Harrington*, 562 U.S. at 99. "When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*  Furthermore, when a state court does not include any reasons for the denial of a collateral attack, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The "contrary to" prong of § 2254(d)(1) means that a state court decision "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite] result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J.).  In other words, "the state court's decision must be substantially different from the relevant [Supreme Court] precedent." *Id.*

Under the "unreasonable application" prong of § 2254(d)(1), a state court decision involves an unreasonable application of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme] Court[ ] cases but unreasonably applies it to the facts of the particular state prisoner's case"; or, (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. "The focus of the . . . inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[A] federal habeas court may not issue the writ simply because [the] court concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Error correction is the function of state-level appeals; whereas "federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice system." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and internal quotation marks omitted). Thus, "[i]n order to satisfy [the 'unreasonable application' prong's] high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and internal quotation marks omitted).

Under 28 U.S.C. § 2254(d)(2), a federal court may grant habeas relief when the state court's determination of the facts was unreasonable "in light of the evidence presented in the State court proceeding." "'[A] determination of a factual issue made by a State court shall be presumed to be correct,' and the prisoner bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Jenkins v. Comm'r, Alabama Dep't of Corr.*, 963 F.3d 1248, 1264 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(e)(1)). *But see Burt*, 571 U.S. at 18 ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1).").

As with § 2254(d)(1), a federal habeas court "accord[s] the state trial court substantial deference [for claims brought under § 2254(d)(2)]." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). Therefore, "the 'unreasonable determination of the facts' prong does not permit habeas relief 'merely because [the habeas court] would have reached a different conclusion in the first instance' or if 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Sec'y, Dep't of Corr.*, 800 F. App'x 776, 779–80 (11th Cir. 2020) (quoting *Brumfield*, 576 U.S. at 313-14 (cleaned up)). For a federal court to grant relief under § 2254(d)(2), as with § 2254(d)(1), "the state court's [factual] determination must be 'objectively unreasonable.'"

*Landers v. Warden, Atty. Gen. of Ala.,* 776 F.3d 1288, 1294 (11th Cir. 2015) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).  Objectively unreasonable means more than "merely wrong; even clear error will not suffice." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2298 (2017) (citations and internal quotation marks omitted).  Therefore, even if the state postconviction court makes a factual error, its decision should be affirmed if there is some alternative basis sufficient to support it.  *See Pineda v. Warden*, 802 F.3d 1198, 1202 (11th Cir. 2015).

In sum, "AEDPA's requirements reflect a presumption that state courts know and follow the law." *Woods*, 575 U.S. at 316 (citation and internal quotation marks omitted).  Therefore, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.*  Indeed, section 2254(d)'s "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181.  "This is especially true for claims of ineffective assistance of counsel . . . in order to afford both the state and the defense attorney the benefit of the doubt." *Woods*, 575 U.S. at 316-17.

### B.  Ineffective Assistance of Counsel

While AEDPA's substantial deference applies to some of the issues raised in the instant Petition, an additional layer of deference applies to claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. at 668.  *See Cullen*, 563 U.S. at 190 (citing *Strickland* and stating that review was "doubly deferential" as it required a "highly deferential look at counsel's performance through the deferential lens of § 2254(d)") (citations and internal quotation marks omitted).  The Sixth Amendment to the United States Constitution guarantees criminal

defendants the right to the assistance of counsel during criminal proceedings against them.  *See Strickland*, 466 U.S. at 684-85.  "[D]efendants in state court prosecutions have such right under the Fourteenth Amendment."  *Minton v. Sec'y Dep't of Corrs.*, 271 F. App'x 916, 917 (11th Cir. 2008).  The Constitution, however, "does not guarantee the right to perfect counsel; it promises only the right to effective assistance."  *Burt*, 571 U.S. at 24.  When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance.  *See id.* at 687-88.  To establish deficient performance, a petitioner must show that, "in light of all the circumstances, [counsel's performance was] outside the wide range of professionally competent assistance."  *Id.* at 690; *see Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.").  A court's review of performance should focus "not [on] what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*), *cert. den'd*, 531 U.S. 1204 (2001) (citation and internal quotation marks omitted).  There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions.  *See id.* at 1317.  "Thus, no absolute duty exists to investigate particular facts or a certain line of defense."  *Id.*  The

test for ineffectiveness is not whether counsel could have done more or whether the best criminal defense attorneys might have done more. *See id.* at 1316 n.12. Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that no competent counsel would have taken the action that his counsel did take.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (quoting *Chandler*, 218 F.3d at 1315).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

On habeas review, "under th[e] doubly deferential standard [applicable to ineffective assistance of counsel claims], the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012) (citation and internal quotation marks omitted). "[I]f, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and [section 2254(d)] precludes the grant of habeas relief." *Id.* (internal citation omitted); *cf. Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (*en banc*) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of a *Strickland* claim applies only to *Strickland*'s performance prong, not to

the prejudice inquiry). This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y, D.O.C.*, 643 F.3d 907, 911 (11th Cir. 2011).

## V.   **DISCUSSION**

### A. **Ground 1: Jury Instructions**

In Ground 1, Petitioner contends that his trial counsel provided ineffective assistance of counsel by failing to object to the jury instructions on self-defense. For the reasons stated below, I find that Ground 1 provides Petitioner no basis for relief.

At trial, Petitioner's primary contention was that he shot Cruz in self-defense. Petitioner's trial counsel requested an instruction on self-defense. [DE 7-1 at 297]. Petitioner's trial counsel wanted the instruction to indicate that "a person is justified in using deadly force when he reasonably believes such force is necessary to prevent" harm to himself while defending against a "forcible felony." *Id.* To further define "forcible felony," Petitioner's trial counsel sought to inform the jury that Petitioner was justified in using deadly force if he was "in fear of the commission of a second degree murder against him as well as in fear of an aggravated battery being committed against him." *Id.* at 298. However, according to Petitioner's trial counsel, the State's trial counsel believed it would be improper to include aggravated battery in the instructions. *Id.* at 297-98. Petitioner's trial counsel acknowledged that Petitioner would have to testify to support the inclusion of aggravated battery. *Id.* at 299. The trial court and the parties agreed to wait to see if the evidence adduced at trial would support that Petitioner "was in fear of th[e] commission of an aggravated battery against him." *Id.*

Ultimately, Petitioner elected not to testify.  *Id.* at 448-52.  Petitioner primarily relied on the some of the statements he made to law enforcement, which were audio recorded and played for the jury, as evidence to support his defense.  *Id.* at 232-45.  After Petitioner rested his case in defense, Petitioner's trial counsel informed the trial court that the parties had resolved the issue with the instruction on self-defense.  *Id.* at 453-54.  The final instruction provided to the jury on self-defense, or more aptly, the justifiable use of deadly force, was as follows:

> An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Frank Reyes is charged if the injury to Alfredo Cruz resulted from the justifiable use of deathly [sic] force.
>
> Deadly force means force likely to cause death or great bodily harm. The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting:
>
>> 1. another's attempt to murder him, or
>> 2. any attempt to commit murder in the second degree upon him, or
>> 3. any attempt to commit murder in the second degree upon or in any dwelling, residence or vehicle occupied by him.

*Id.* at 523-24.  The final instruction also stated the following regarding the duty to retreat:

> If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force.

*Id.* at 525.

In the Petition (and in his reply to Respondent's response), Petitioner contends that his counsel was ineffective because he failed to object to "legally incorrect" instructions.  Petitioner contends that his counsel erred in two respects.  First, Petitioner argues that his counsel should have objected to the instructions indicating Petitioner was only entitled to resort to deadly force if the victim was attempting to murder him; rather, Petitioner claims his counsel should have insisted that the trial court include attempts at aggravated battery and aggravated assault by the victim as

also justifying the use of deadly force.  Second, Petitioner argues his counsel should have objected

to the instruction regarding the duty to retreat because that instruction was improper under the

circumstances.

### 1.  Instruction Regarding the Use of Deadly Force

Petitioner's first argument contends that trial counsel should have objected to the

instruction regarding the use of deadly force because it included second degree murder (and not

aggravated battery or aggravated assault) as the applicable felonies against which Petitioner was

justified in using deadly force.  The standard jury instructions on the use of deadly force enable

the parties and the trial court to identify an applicable felony that a defendant is justified in using

deadly force to prevent against, as long as that felony is supported by the evidence:

> Use of deadly force is justifiable only if the defendant reasonably believes that the
> force is necessary to prevent imminent death or great bodily harm to himself while
> resisting:
>
> another's attempt to murder him, or
>
> any attempt to commit (applicable felony) upon him
>
> any attempt to commit (applicable felony) upon him or in any dwelling, residence
> or vehicle occupied by him.

Fla. Std. Jury Instr. (Crim.) 3.6(f).  As seen above, the final instructions to the jury on the use of

deadly force included "second degree murder" as the "applicable felony."  [DE 7-1 at 523].

Petitioner argues that these instructions on the use of deadly force, as read, negated his defense.

According to Petitioner, there was no evidence that Cruz, the victim, attempted to murder (or

commit a second-degree murder on) him.  Rather, Petitioner argues that his statements to law

enforcement supported that he reasonably believed Cruz was attempting to commit an aggravated

assault or aggravated battery on him just before he shot Cruz.  As such, Petitioner argues that his

trial counsel should have objected to the final instruction and requested that the felonies of

aggravated assault and aggravated battery be included in the instructions.  Petitioner also argues that the state courts unreasonably found that he was not prejudiced by his trial counsel's allegedly deficient performance.

In his Rule 3.850 Motion, Petitioner similarly argued that his trial counsel should have objected to the instruction and requested the inclusion of aggravated assault and aggravated battery and that counsel's failure to do so amounted to ineffective assistance.  [DE 6-1 at 179-81].  In response, the State contended that Petitioner failed to establish the deficient performance prong of *Strickland* because "there [wa]s no record evidence to support the inclusion of either aggravated battery or aggravated assault in instruction 3.6(f) [on the] justifiable use of deadly force."  *Id.* at 206.  Because the State asserted that there was no record evidence that Cruz committed "an aggravated battery as defined in Fla. Stat. 784.045 (2009) or an aggravated assault per Fla. Stat. 784.021," it argued that "those felonies would not have been properly included even had trial counsel asked for them." *Id.* at 209.  The state trial court summarily denied Petitioner's Rule 3.850 Motion "for the reasons contained in the State's Response." *Id.* at 814.  After Petitioner appealed the trial court's ruling to the Fourth District Court of Appeal, the Fourth District Court of Appeal per curiam affirmed the trial court's decision. *Id.* at 854.

Because the Fourth District Court of Appeal, the last court to consider Petitioner's claim regarding this jury instruction, summarily affirmed the trial court's denial, this Court must "'look through' that unexplained decision 'to the last related state-court decision that does provide a relevant rationale.'" *Carey v. Dep't of Corr.*, 57 F.4th 985, 992 (11th Cir. 2023) (quoting *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)).  Here, that last related state court decision was the trial court's order denying Petitioner's Rule 3.850 Motion "for the reasons contained in the State's

Response."  Thus, this Court must examine the reasoning provided in the State's response to Petitioner's Rule 3.850 Motion.

The State's reasoning for denying Petitioner's Rule 3.850 Motion, which the trial court ultimately adopted (and the Fourth District Court of Appeal affirmed), was that Petitioner did not establish deficient performance under *Strickland*.  Specifically, it reasoned that there was no record evidence that the victim committed an aggravated battery or aggravated assault under the relevant Florida statutes, and thus Petitioner would not have been entitled to instructions based on those felonies.  In other words, trial counsel could not have been ineffective because the instruction Petitioner argues trial counsel should have requested would not have been merited and the request would have been futile.  Petitioner contends that that the state courts "unreasonably denied relief," but he fails to meet his exacting burden to demonstrate why.  *See Morris*, 677 F.3d at 1126 (stating that the deference afforded *Strickland* claims when viewed under the AEDPA lens is "doubly difficult for a petitioner to overcome").

Crucially, the state court's ruling centered around an interpretation of Florida state law, specifically whether there was sufficient evidence of the victim committing the felonies of aggravated battery or aggravated assault as defined by state statutes and whether the evidence presented entitled Petitioner to an instruction under the state's self-defense law.  The state court determined that the answer to these questions was "no."  This Court must defer to that determination because it must defer to the state courts' interpretation of state law.  *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (citations omitted)).

26

After all, "state law is what the state courts say it is," and "it is not a federal court's role to examine the propriety of a state court's determination of state law." *Id.* at 1299. Therefore, while Petitioner takes issue with the state court's determination of what he needed to show to merit a self-defense instruction and what satisfies the state statute's elements of aggravated battery and aggravated assault (*see* DE 9 at 14-15), those arguments are unavailing here.

Having determined that the trial court could not have properly given the instructions that Petitioner argues his trial counsel should have requested, the state court's conclusion that trial counsel's performance was not deficient (and thus the state court's application of *Strickland*) was reasonable. After all, "an attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney*, 876 F.3d at 1297 (citations omitted); *see also Chandler*, 240 F.3d at 917 (recognizing that counsel is "not ineffective for failing to raise a nonmeritorious issue"). Therefore, Petitioner has failed to show that the state court's application of *Strickland* was unreasonable.

### 2. **Instruction Regarding the Duty to Retreat**

Petitioner's second argument contends that the instruction on the duty to retreat was improper and his trial counsel was deficient in failing to object to it. The pertinent language in the jury instruction stated that: "[i]f the defendant *was not engaged in an unlawful activity* and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force." [DE 6-1 at 634] (emphasis added). Petitioner contends that because he *was* "engaged in an unlawful activity" at the time of the offense (a sale of marijuana), the instruction given by the trial court did not apply. Instead, Petitioner contends that the applicable instruction was the pre-2005 special jury instruction concerning

common law self-defense and the duty to retreat for an individual engaged in unlawful activity.

The special jury instruction on common law self-defense stated the following:

> If you find that the defendant was engaging in an unlawful activity or was attacked
> in a place where he did not have the right to be then you must consider if the
> defendant had a duty to retreat. If the defendant was placed in a position of
> imminent danger or death or great bodily harm and it would have increased his own
> danger to retreat then his use of force likely to cause death or great bodily harm was
> justifiable.

*Dorsey v. State*, 74 So. 3d 521, 526 (Fla. 4th DCA 2011) (quoting Fla. Std. Jury Instr. (Crim.)

3.6(f) (2004)).  Petitioner contends that because the trial court did not instruct the jury on the duty

to retreat for an individual engaged in an unlawful activity, he was left without a viable defense

and deprived of a fair trial.

Although Petitioner clearly advanced this argument in his Rule 3.850 Motion as a distinct reason

why the jury instructions were improper (and why his counsel should have objected), the State did

not address the argument in its response.  Consequently, the state court's order, which adopted the

reasoning from the State's response, did not address Petitioner's argument either.  As such,

AEDPA deference does not apply to this claim, and this Court must review the claim de novo.  *See*

*Porter v. McCollum*, 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether

Porter's counsel was deficient, we review this element of Porter's *Strickland* claim de novo.");

*Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1250 (11th Cir. 2013) ("[I]f we determine that

AEDPA deference does not apply, we must undertake a de novo review of the claim.").

However, even under a de novo standard, Petitioner's ineffective assistance of counsel

claim regarding the duty to retreat instruction must fail because Petitioner has not shown both

deficient performance and prejudice.  Most notably, Petitioner has not shown that the failure of his

trial counsel to both object and ask for the special instruction was prejudicial.  That is, Petitioner

cannot show a reasonable likelihood that he would have been acquitted if his trial counsel had

objected to the given standard instruction and requested the special instruction on the duty to retreat.  *See Harrington*, 562 U.S. at 111-12 (describing that "reasonably likely" under *Strickland*'s prejudice standard means "sligh[ly]" less than "more likely than not altered the outcome").

Petitioner says the problem with the given instruction is that it suggested that Petitioner had a duty to retreat (since the given instruction only talks about a person <u>not</u> having a duty to retreat if he is <u>not</u> engaged in unlawful behavior – tacitly implying that someone engaged in unlawful behavior has a duty to retreat).  Petitioner argues that "the correct approach was to omit the inapplicable stand your ground instructions and give only a special jury instruction concerning common law self-defense and the duty to retreat for an individual engaged in unlawful activity[.]" [DE 9 at 17].  He then quotes the pre-2005 standard instruction on justifiable use of deadly force that he asserts his counsel should have requested and that the court should have given.

But that proposed instruction says that, "If the defendant was in a position of imminent death or great bodily harm *and it would have increased his own danger to retreat* then his use of force likely to cause death or great bodily harm was justified."  *Id*. at 18 (citing *Dorsey*, 74 So. 3d at 527) (emphasis added).  Petitioner suffered no prejudice from counsel's failure to insist that this pre-2005 standard instruction be given in addition to or in lieu of the standard statutory "Stand Your Ground" instruction.  That is because Petitioner does not point to any evidence upon which the jury could have found that he satisfied the underlined portion of the proposed instruction. Petitioner's brief does not describe any evidence suggesting that retreating "would have increased his own danger," and having reviewed the trial transcript, I cannot find any such evidence.  Thus, even Petitioner's proposed instruction could only have led the jury to conclude that Petitioner had a duty to retreat, and there is no reasonable probability that the proposed instruction would have led the jury to acquit Petitioner.  Petitioner therefore has failed to demonstrate prejudice.

Petitioner has also failed to demonstrate deficient performance.  The at-issue language regarding the duty to retreat was part of the standard jury instruction on the justifiable use of deadly force at the time of trial and, in Florida courts, standard instructions are presumed to be correct. *See Peters v. State*, 33 So. 3d 812, 814 (Fla. 4th DCA 2010).  The Florida Supreme Court has also upheld the standard jury instruction on the justifiable use of deadly force and, albeit in a different context, stated that the instruction "accurately and correctly" explained the law.  *State v. Floyd*, 186 So. 3d 1013, 1020 (Fla. 2016).  Thus, Petitioner's trial counsel cannot be said to have performed deficiently for failing to object to a standard instruction that has not been invalidated by the Florida Supreme Court.  *See Griffin v. State*, 866 So. 2d 1, 15 (Fla. 2003).  And assuming arguendo Petitioner was somehow able to prove deficient performance, his ineffective assistance of counsel claim would still fail because, as stated above, he cannot not demonstrate prejudice.

### B.  Ground 2: Juror McDougle

In Ground 2, Petitioner argues that Juror McDougle's failure to disclose (when asked for the second time) that he was a victim of a violent crime violated Petitioner's Sixth Amendment right to an impartial jury.  For the reasons stated below I find that Ground 2 does not provide Petitioner any basis for relief.

During jury selection, the trial court required each of the prospective jurors to state their answers to the questions from the juror questionnaire on the record.  [DE 7-1 at 39-61].  Juror McDougle, who was the first juror on the panel, responded to the questions as follows:

> Yes, I'm married. My wife is a housewife. I am employed. Professional athlete. I graduated college with a BA. I was arrested when I was young. *I have been a victim of a crime.* I don't have any friends or relatives that's employed in law enforcement. I never served on a jury.

*Id.* at 40 (emphasis added).  Juror McDougle also informed the court, after follow-up questioning, that he played football for the New York Giants. *Id.*  Later when the State's trial counsel asked if

anyone on the panel had ever been a victim of a violent crime, no one apparently responded. *Id.* at 99. Then, when Petitioner's trial counsel asked if anyone on the panel had ever witnessed an "act of violence," Juror McDougle did not respond. *Id.* at 143-44. Juror McDougle was ultimately chosen to serve on the jury panel. *Id.* at 164.

After the trial, Petitioner learned that Juror McDougle had been the victim of a violent crime — an armed robbery — four years prior to the trial. [DE 6-1 at 978]. In July 2005, Juror McDougle was shot in the stomach by masked robbers who also stole his wristwatch. *Id.* at 979, 983. As a result of the shooting, Juror McDougle was hospitalized for an extended period of time, underwent surgery, and had to miss multiple weeks of the 2005-2006 football season. *Id.* at 979-86. In his Rule 3.850 Motion, Petitioner argued that Juror McDougle's failure to disclose that he was a victim of a violent crime either constituted new evidence that entitled him to a new trial or that his trial counsel rendered ineffective assistance by failing to properly question Juror McDougle. *Id.* at 184-86. After Petitioner's Rule 3.850 Motion was summarily denied, Petitioner reiterated his arguments therein in his initial brief to the Fourth District Court of Appeal. *Id.* at 833, 840-42.

As stated above in section III.B, I find that Petitioner has failed to exhaust (and has procedurally defaulted) his Sixth Amendment impartial jury claim and cannot raise it before this Court. The only federal claim Petitioner fairly presented to the state court regarding Juror McDougle was an ineffective assistance of counsel claim, which concerned trial counsel's failure to question Juror McDougle on the circumstances of his victimization. However, Petitioner has arguably forfeited his ineffective assistance claim as well. It is unclear (at best) whether Petitioner properly presented this claim to this Court. Ground 2 of the Petition solely states that "seated juror Jerome McDougle's misconduct must result [in] Reyes receiving a new trial." [DE 1 at 8].

Petitioner lists the following facts to support Ground 2: "Seated juror Jerome McDougle failed to disclose that he had been a victim of a violent crime. Reyes must be afforded a new trial as a result of juror McDougle's misconduct." *Id.* Nowhere in the Petition does Petitioner mention that Ground 2 includes allegations of ineffective assistance of counsel. Petitioner raises the issue of ineffective assistance of counsel regarding his counsel's failure to question Juror McDougle in his reply. *See* [DE 9 at 22 n.5, 24]. But arguments raised for the first time in a reply brief are deemed waived. *See United States v. Coy*, 19 F.3d 629, 632 (11th Cir. 1994). Moreover, even Petitioner's references to ineffective assistance of counsel in his reply are "bald and conclusory."[6] *See Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1280 n.7 (11th Cir. 2012) (stating that a party waived an argument that was made in a "bald and conclusory" fashion).

Nevertheless, even assuming Petitioner has sufficiently presented his ineffective assistance of counsel claim for the Court to consider it, Petitioner fails to explain (much less carry his burden to show) how the state court's decision to deny his ineffective assistance of counsel claim was either "contrary to" or "an unreasonable application" of *Strickland*[7] or any other clearly established federal case law. Petitioner also fails to point to a factual determination that the state court made or show how that factual determination was "objectively unreasonable." *Landers*, 776 F.3d at 1294; *see Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (stating that the state court's decision "must have been 'objectively unreasonable'" and not merely "incorrect or erroneous").

---

[6] [DE 9 at 22 n.5] ("As argued in state court proceedings, McDougle's misconduct should be considered new discovered evidence or, in the alternative, attributed to defense counsel's failure to ask McDougle more specific questions about being a victim of a crime during jury selection."); [DE 9 at 24] ("Reyes, however, raised McDougle's juror misconduct in his state postconviction proceedings as newly discovered evidence and ineffective assistance of counsel. Newly discovered evidence and ineffective assistance of counsel form the basis for the ground raised by Reyes in this proceeding.").

[7] It is not evident what clearly established federal case law Petitioner contends that the state court's decision was "contrary to."

Furthermore, even under a de novo standard of review (affording no ADEPA deference to the state court's decision), Petitioner's ineffective assistance of counsel claim fails for a reason not mentioned by the state court: Petitioner's counsel's performance was not constitutionally deficient for the same reasons Petitioner argued that evidence of McDougle's victimization met the standard for "newly discovered evidence." In other words, Petitioner's "newly discovered evidence" and ineffective assistance of counsel arguments are incongruous.

As part of his "newly discovered evidence" argument in his Rule 3.850 Motion, Petitioner acknowledged that he needed to demonstrate, *inter alia*, that "neither defendant *nor his counsel* could have known of [the evidence of Juror McDougle being a victim of a violent crime] by the use of diligence." [DE 6-1 at 184] (citing *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998)) (emphasis added). Petitioner further asserted that he satisfied that requirement. [DE 6-1 at 185] ("The second and third prongs are equally established."). The State's response to the Rule 3.850 Motion countered that the information about Juror McDougle "could have been obtained through due diligence," such as by inputting Juror McDougle's name into an internet search engine. [DE 6-1 at 210]. In his reply brief before this Court, Petitioner pushes back on this contention, arguing that "a defendant must be able to rely on responses given during jury selection[, and ]t]here is no requirement that a defendant investigate a potential juror during jury selection using an alternative source, such as the internet, *when nothing triggers the need for additional investigation.*" [DE 9 at 23] (emphasis added).

Petitioner's argument on diligence contradicts his argument that his trial counsel performed deficiently. If Petitioner's trial counsel did not know about the evidence regarding Juror McDougle at the time of trial and could not have known about the evidence even if he was diligent, and if nothing in Juror McDougle's voir dire responses triggered a particular need for further

inquiry, Petitioner's trial counsel cannot have been constitutionally ineffective for failing to further question Juror McDougle.  While reasonable counsel might have individually questioned Juror McDougle about his initial answer that he was the victim of a crime (despite his lack of response to the prosecutor's question about violent crimes), the test for ineffectiveness is not whether counsel could have done more or whether the best criminal defense attorneys might have done more.  *See Chandler* 218 F.3d at 1316 n.12.   Thus, Petitioner fails to establish that his counsel's failure to individually question Juror McDougle amounts to an error "so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Therefore, I find that Ground 2 does not merit relief.

### C. <u>Ground 3: Petitioner's Sentence</u>

In Ground 3, Petitioner argues that his sentence was illegal because the juvenile sentencing laws enacted after his conviction make his sentence grossly disproportionate to those of other juvenile homicide offenders, in violation of the Eighth Amendment's ban on cruel and unusual punishment.  For the reasons stated below, I find that Ground 3 provides no basis for relief.

Petitioner was sixteen years old at the time he committed the offense.  He was charged with and ultimately convicted of second-degree murder.  The trial court sentenced Petitioner to forty years in prison with a mandatory minimum sentence of twenty-five years in prison.  After Petitioner's sentence, in *Graham v. Florida*, 560 U.S. 48 (2010), the United States Supreme Court held that a sentence of life in prison without parole for a juvenile convicted of a nonhomicide offense violated the Eighth Amendment.  560 U.S. at 74.  The *Graham* Court specified that while states were not required to "guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," they must give defendants "some meaningful opportunity to obtain release

based on demonstrated maturity and rehabilitation." *Id.* at 75.  In *Miller v. Alabama*, 567 U.S. 460 (2012), the United States Supreme Court extended its holding in *Graham* and held that *mandatory* sentences of life in prison without parole for juveniles convicted of homicide offenses violated the Eighth Amendment.  567 U.S. at 465, 479.  In *Henry v. State*, 175 So. 3d 675 (Fla. 2015), the Florida Supreme Court extended the holding of *Graham* beyond life sentences to lengthy term-of-years sentences that do not afford juvenile offenders a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" during their natural life.  175 So. 3d at 679-80.

In response to *Graham* and *Miller*, "the Florida Legislature unanimously enacted legislation in 2014 designed to bring Florida's juvenile sentencing statutes into compliance with the United States Supreme Court's recent Eighth Amendment juvenile sentencing jurisprudence." *Horsley v. State*, 160 So. 3d 393, 394 (Fla. 2015).  This juvenile sentencing legislation is found in chapter 2014-2020, Laws of Florida, and has been codified in sections 921.1401 and 921.1402, Florida Statutes.  *Id.* at 401.  While the new legislation provides that juvenile offenders convicted of a capital, life, or first-degree felony homicide offense under section 775.082, Florida Statutes, may be sentenced to life imprisonment or a term of years equal to life imprisonment, the sentencing court must "consider factors relevant to the offense and the defendant's youth and attendant circumstances" before rendering the sentence.  *See* § 921.1401(2), Fla. Stat.  In addition to requiring that trial courts consider factors relevant to the defendant's youth, the new juvenile sentencing legislation provides that most[8] juvenile offenders sentenced under section 775.082, Florida Statutes, to life in prison, the functional equivalent of life in prison, forty years in prison,

---

[8] The juvenile offender is not entitled to review if he or she had previously been convicted of one of certain enumerated offenses or conspiracy to commit one of those enumerated offenses.  *See* § 921.1402(2)(a), Fla. Stat.

or a term more than twenty-five years in prison are "entitled to a review of his or her sentence after 25 years." *See* § 921.1402(2)(a), (b), Fla. Stat.[9]

The mandatory sentence review only applies to juveniles who committed an offense on or after July 1, 2014, or juveniles whose sentences were found unconstitutional under *Miller*. *See* § 921.1402(1); *Horsley*, 160 So. 3d at 394-95. The Florida Supreme Court also held that all juvenile offenders whose sentences are unconstitutional under *Miller* are entitled to be resentenced in accordance with chapter 2014-2020, Laws of Florida. *See Horsley*, 160 So. 3d at 409.

Petitioner does not seem to argue that the holdings in *Miller* or *Graham* apply to his sentence or that those holdings themselves require him to be re-sentenced.   Rather, Petitioner argues that because of the new juvenile sentencing laws, his sentence is now "excessive and grossly disproportionate" compared to other juvenile offenders, and that the disproportionate treatment renders his sentence unconstitutional.   Specifically, Petitioner argues his sentence is now disproportionate because he is not entitled to a sentencing review (with the possibility of early release) after twenty-five years, whereas juvenile offenders sentenced after the new juvenile sentencing laws to sentences the same length as Petitioner's (including those who originally received longer, life sentences that have now been vacated under *Miller* and are being re-sentenced) are entitled to such review, even if those other offenders are convicted of first-degree murder.   Petitioner also posits that other juvenile offenders sentenced under section 775.082, Florida Statutes, to prison terms much less than his are entitled to a review of their sentence.   In other words, Petitioner argues that the remedies created in the wake of *Graham* and *Miller* leave him (at least potentially) worse off in comparison to those offenders whose sentences (unlike

---

[9] The new legislation also provides that juvenile offenders sentenced to term of year sentences of either fifteen or twenty years are also entitled to a review of their sentence. *See* § 921.1402(2)(c), (d), Fla. Stat.

Petitioner's) were unconstitutional under *Graham* and *Miller*, as well as in comparison to others sentenced in years after him.

The state court, adopting the State's response to Petitioner's motion, found that Petitioner's sentence did not violate the Eighth Amendment, relying on *Pedroza v. State*, 291 So. 3d 541, 549 (Fla. 2020).  In *Pedroza*, the juvenile defendant was charged with first-degree murder but pled guilty to second-degree murder in exchange for a forty-year sentence.  291 So. 3d at 543.  After *Miller*, the defendant challenged her sentence as cruel and unusual punishment under *Miller*. *Id.* at 543.  Ultimately, the Florida Supreme Court rejected Pedroza's challenge, holding that her forty-year sentence was not unconstitutional under *Miller* because it was not a life sentence or the functional equivalent of a life sentence. *Id.* at 545.  Although not explicitly discussed in the State's response to Petitioner, the majority in *Pedroza* also clarified several of the Florida Supreme Court's other post-*Miller* rulings to hold that juvenile term-of-years sentences that do not amount to the functional equivalent of a life sentence do not violate *Graham* and *Miller*, even if they lack a "meaningful opportunity for early release."  In a dissenting opinion, Florida Supreme Court Justice Jorge Labarga stated the following:

> Ironically, if Pedroza had pleaded guilty to first-degree murder and received a mandatory life sentence, she would actually be in a better position because she would have been entitled to resentencing[.] Instead, Pedroza, who was sentenced in 2002, is not entitled to judicial review of her sentence prior to her projected release in 2037.
>
> Given this disproportionate result, I respectfully dissent.

*Id.* at 549.[10]   However, despite Justice Labarga's observation of the "disproportionate result," the United States Supreme Court denied Pedroza's petition for a writ of certiorari. *Pedroza v. Florida*, 141 S. Ct. 341 (2020).

Petitioner argues that the state courts' rejection of this ground "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."[11] [DE 9 at 28].  However, Petitioner does not point to any clearly established United States Supreme Court precedent that the state court's decision was "contrary to" or that the state court "unreasonably applied."  Again, Petitioner does not appear to argue that the holdings of *Graham* or *Miller*, the primary United States Supreme Court cases to which he cites, apply to his sentence. Nor could he reasonably so argue, as those cases narrowly apply to sentences of life without parole. *See Graham*, 560 U.S. at 82; *Miller*, 567 U.S. at 465; *United States v. Grant*, 9 F.4th 186 (3d Cir. 2021) (en banc) (explaining the scope of *Miller* and declining to extend it to a discretionary sentence of 65 years); *Kirkland v. Sec'y, Fla. Dep't of Corr.*, 3:16CV482-LC-HTC, 2022 WL 1786053, at *10 (N.D. Fla. Mar. 23, 2022) (stating that the petitioner failed to point to "U.S. Supreme Court precedent that clearly establishes that a forty-year sentence, with a 25-year mandatory minimum, is unconstitutional"), *report and recommendation adopted sub nom. Kirkland v. Sec'y of Fla. Dep't of Corr.*, 3:16CV482-LC-HTC, 2022 WL 1778214 (N.D. Fla. June

---

[10] At least one other jurist in Florida has expressed a similar viewpoint.  *See McArthur v. State*, 313 So. 3d 244, 246 (Fla. 1st DCA 2021) (Bilbrey, J., concurring) ("I write to highlight that this is again a case in which Appellant will be treated differently than other defendants who committed serious criminal offenses as juveniles." (internal quotes omitted)).  However, Justice Labarga's (and Judge Bilbrey's) viewpoint has not gained traction.  Various appellate courts in Florida have also applied *Pedroza* and found that Petitioner's forty-year sentence and term-of-years sentences of up fifty years do not violate the Eighth Amendment.  *See Nugent v. State*, 338 So. 3d 459, 461-62 (Fla. 2d DCA 2022) (collecting cases).

[11] Petitioner does not assert that the state court failed to adjudicate the merits of his argument or otherwise contend that this Court does not owe the state court's decision deference under AEDPA.

1, 2022).   Rather, at most, Petitioner has suggested that his sentence (as compared to those convicted of capital murders and then sentenced or re-sentenced under the more recent sentencing regime) violates the more general principle that the Eighth Amendment guards against "disproportionate" sentences.  [DE 9 at 25] (citing *Montgomery v. Louisiana*, 136 S. Ct. 718, 732-33 (2006)).

However, Petitioner has not identified any case applying this disproportionality principle to a similar context.  He has not identified any case addressing a sentence of similar length to his.  He has not identified a case addressing disparities arising from subsequent changes in sentencing law.  Specifically, he has not argued or shown that the state court identified the wrong legal standard, contradicted a holding of the U.S. Supreme Court, or reached the opposite conclusion of the U.S. Supreme Court on an indistinguishable set of facts.  Therefore, he cannot show that the state courts' decision was "contrary to" clearly established Federal law.  *See Williams*, 529 U.S. at 405; *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010).

Nor has Petitioner demonstrated that the state courts unreasonably failed to apply a clearly established principle to a new context.  *See Williams*, 529 U.S. at 405; *Ward*, 592 F.3d at 1155 (discussing the "reasonable application" prong of § 2254(d)(1)).  Petitioner quotes (without any attempt at more rigorous analysis) the Supreme Court's observation, in *Solem v. Helm*, 463 U.S. 277, 291 (1983), that "if more serious crimes are subject to the same penalty, or to less serious penalties, that is *some* indication that the punishment at issue *may* be excessive."  [DE 9 at 25] (emphasis added).  But he fails to explain why the failure to apply that observation here was "unreasonable" or why no fair-minded jurist applying the principles in *Solem* could conclude that his sentence was not excessive.  He also fails to note that *Solem* articulated a multi-factor guide of objective factors for evaluating disproportionality (of which he quotes only one).  *See Solem*, 463

U.S. at 290-292.[12]  Indeed, the Supreme Court's use of the words "*some* indication" and "*may* be excessive" demonstrate that this factor alone does not compel the conclusion that a particular sentence is unconstitutionally disproportionate and at least implies that reasonable jurists could disagree about this factor's significance in a given case.  Moreover, *Solem* applied its objective criteria to find that a sentence of life imprisonment for the non-violent offense of uttering a "no account" $100 check was unconstitutionally disproportionate.  Petitioner's case – involving a forty-year sentence for the crime of second-degree murder – is clearly distinguishable, and *Solem* hardly compels all reasonable jurists to find otherwise.[13]

Accordingly, I find that Ground 3 does not afford Petitioner any basis for relief.

## D. **Evidentiary Hearing**

Petitioner requests an evidentiary hearing, in the alternative, for Grounds 1 and 2 of his Petition.  [DE 9 at 19, 25, 29].  Petitioner has the burden to establish the need for an evidentiary hearing.  *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011).  "[I]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could

---

[12] Importantly, the Eleventh Circuit has construed *Harmelin v. Michigan*, 501 U.S. 957 (1991), as modifying *Solem*'s multi-factor test.  *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *United States v. Brant*, 62 F.3d 367, 368 (11th Cir. 1995).  Post-*Harmelin*, the Eleventh Circuit considers the first factor articulated in *Solem* – whether the sentence imposed is grossly disproportionate to the offense – as a threshold question.  *Brant*, 62 F.3d at 368.  Only if the court makes this threshold determination can it go on to consider the other two *Solem* factors, including the factor that Petitioner cites (comparing the sentence to those of others in the same jurisdiction).  *Id.*; *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000).  Notably, Petitioner does not mention this threshold factor, much less analyze how it would apply to his sentence.

[13] Notably, the *Solem* court itself observed both that "'[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare,'" 463 U.S. at 290 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980) (emphasis in original), and that, "Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals."  463 U.S. at 289-90.

enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[T]he district court need not conduct an evidentiary hearing if the record refutes the petitioner's factual allegations, otherwise prevents habeas relief, or conclusively demonstrates that the petitioner was not denied effective assistance of counsel." *Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915, 926 (11th Cir. 2017) (citing *Schriro*, 550 U.S. at 474). A petitioner's conclusory allegations fail to demonstrate that an evidentiary hearing is warranted. *See Chavez*, 647 F.3d at 1061.

Furthermore, the deferential standards of habeas review under § 2254 apply in determining whether an evidentiary hearing is appropriate. *See Schriro*, 550 U.S. at 474 ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts."). Thus, "before a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295.

Here, Petitioner fails to carry his burden. Specifically, Petitioner fails to demonstrate the existence of any basis to warrant a federal evidentiary hearing. Rather, Petitioner's claims are all resolvable based upon the state court record without the need to develop the record further. Therefore, I find that an evidentiary hearing is unnecessary and decline to hold one.

### E.  Certificate of Appealability

A habeas petitioner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability to do so. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a district court has rejected a petitioner's claims on a procedural basis, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Upon consideration of the record, the Court should deny a certificate of appealability, because reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections to this Report.

## VI.     <u>CONCLUSION</u>

For the foregoing reasons, I respectfully **RECOMMEND** that the Petition for Writ of Habeas Corpus [DE 1] be **DENIED** and that no certificate of appealability be issued.

The parties will have fourteen days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. §

636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida on this 11th day of April 2023.

Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz II
United States District Judge

Counsel of record